RACINE EDUCATION ASSOCIATION, and
James Ennis, individually and as Executive
Director of the Racine Education Association,
Plaintiffs-Appellants,

Ben EWERS, individually and as Assistant
Executive Director of the Racine Education
Association, Plaintiff,

v.

BOARD OF EDUCATION FOR RACINE
UNIFIED SCHOOL DISTRICT, Bernice
Thomsen, as Member of the Board of Education
for the Racine Unified School District and its
Clerk, Don P. Woods, Superintendent of the
Racine Unified School District, and Del
Fritchen, Assistant Supervisor of the Racine
Unified School District, Defendants-Respondents.

Court of Appeals

*No. 85–0862. Submitted on briefs December 10, 1985.—*
*Decided February 5, 1986.*
(Also reported in 385 N.W.2d 510.)

For the plaintiffs-appellants, the cause was submitted on the briefs of *Robert K. Weber* of *Schwartz, Weber, Tofte, & Nielsen* of Racine.

For the defendants-respondents, the cause was submitted on the brief of *Gilbert J. Berthelsen and Jeffrey Leavell* of *Capwell, Berthelsen, Nolden, Casanova, Pitts & Kallenbach, Ltd.* of Racine.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J.  This dispute concerns a written public records request and, after receiving no response, a resultant mandamus action brought by the Racine Education Association (REA) against the Racine Unified School District. While the litigation was pending, the District voluntarily furnished the information; the circuit court therefore held the case moot. REA appeals that ruling. REA also claims that even if the case is dismissed as moot, pertinent case law establishes entitlement to attorney fees and costs if it can show a causal nexus between the lawsuit and the furnishing of the records. We agree that the case is moot. We hold, however, that attorney fees and costs can still be awarded upon a showing of certain factors. We therefore remand that question to the trial court for further proceedings.

REA is a labor organization representing public school teachers in the Racine Unified School District. In January of 1984, it petitioned the Wisconsin Employment Relations Commission to conduct a certification election among substitute teachers. To determine the scope of membership in the bargaining unit, REA presented to WERC a list previously provided by the District as a result of a request for public records. The list purported to name all substitutes as of March 1.

The District alleged that the list was in error and provided its own list. On March 27, a hearing took place and on May 16, WERC decided that an election should be held forty-five days from the date of the decision.

WERC additionally decided that the scope of membership of the bargaining unit should include all substitute and homebound teachers, including long-term substitutes, who were employed through May 16 and who worked at least ten days during the 1983–84 school year.

WERC's formulation of who was in the bargaining unit made both the REA list and the District list of limited value, as those lists were based upon different criteria. A new list was needed.

On May 18, REA made a second public records request asking for records showing who was a member of the bargaining unit. When no answer to the request was forthcoming, an alternative writ of mandamus ensued dated June 7. That same day, the District filed a return to the alternative writ alleging, *inter alia,* that it was exempt under sec. 19.35(1)(*l*), Stats., which states that compliance with a public records request is not mandated if a new record would need to be made by extracting information from existing records. The District also alleged that it was compiling information pursuant to the May 16 WERC order.

REA called two witnesses at the first hearing on June 8 and rested. The matter was eventually continued until June 22. On that day, the District furnished the information to REA. The District thereafter claimed that the case was moot and the trial court agreed. REA asked for attorney fees and costs. The trial court's decision is silent about fees but denies costs. This appeal ensued.

[1]

We first state our agreement with the trial court's dismissal of this case as moot. A moot case has been defined as:

> [O]ne which seeks to determine an abstract question which does not rest upon existing facts or rights, or which seeks a judgment in a pretended controversy when in reality there is none, or one which seeks a decision in advance about a right before it has actually been asserted or contested, or a judgment upon some matter which when rendered for any cause cannot have any practical legal effect upon the existing controversy.

*Ziemann v. Village of North Hudson,* 102 Wis.2d 705, 712, 307 N.W.2d 236, 240 (1981). *Ziemann* explained that courts may review a moot case if the issues are of great public importance, if the constitutionality of the statute is involved or if the situation arises so frequently that a decision will aid trial courts. There is no dispute that the case is moot as defined by *Ziemann.* The trial court also found that none of the conditions applied such that the court should consider the matter anyway.

In assigning error to this determination, REA points to the importance of public records law and the need to build definitive guidelines in a relatively new area of law. In particular, it claims that a decision in this case will emphasize the responsibility to timely respond to public records requests. It concludes that the public importance exception to the general prohibition of deciding moot issues is present. We disagree.

We are satisfied that a decision in this case would not mark a significant trend in the law. In this case,

the competing rules of law are certain but the application doubtful. Deciding cases that are moot should be reserved for those instances where the competing rules are uncertain and where an immediate decision will have a timely impact upon the trial courts. Because of the unique fact situation in this case, the practical effect upon other public records cases is of limited value. We conclude that the trial court correctly dismissed the case as moot.

■

As to attorney fees and costs, however, we rule that the trial court erred. The question presents an issue of statutory construction. We are not bound by trial court interpretations because statutory construction is a question of law. *Hainz v. Shopko Stores, Inc.,* 121 Wis.2d 168, 172, 359 N.W.2d 397, 400 (Ct. App. 1984). We review these questions *de novo. Id.* The statute, part of the Wisconsin Public Records Law, is sec. 19.37(2), Stats., stating:

> (2)    Costs, fees and damages. The Court shall award reasonable attorney fees, damages of not less than $100, and other actual costs to the requester if the requester prevails in whole or in substantial part in any action filed under sub. (1). Costs and fees shall be paid by the authority affected or the unit of government of which it is a part, or by the unit of government by which the legal custodian under s. 19.33 is employed and may not become a personal liability of any public official.

Therefore, this section provides for attorney fees and costs if the requester of public records sues and prevails in whole or in substantial part.

The language of the statute does not inform the reader of the criteria necessary to prevail in substantial part. Because the meaning of "prevails in whole or in substantial part" is unclear, resort may be had to extrinsic aids. *Ball v. District No. 4, Area Board of Vocational, Technical & Adult Education,* 117 Wis.2d 529, 538, 345 N.W.2d 389, 394 (1984). The federal Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(4)(E) (1976), is analogous to sec. 19.37(2), Stats., because the FOIA contains the phrase "substantially prevailed." Comment, *The Wisconsin Public Records Law,* 67 Marq. L. Rev. 65, 104 n.293 (1983). That phrase is similar to "prevails in whole or in substantial part" as set forth in sec. 19.37(2). Both parties submit, and we agree, that federal court decisions are persuasive authority for the interpretation of similar language in our statute. *See Hainz* at 173, 359 N.W.2d at 400.

Federal cases have established the analysis used to determine whether an FOIA plaintiff has "substantially prevailed." The landmark case is *Cox v. United States Department of Justice,* 601 F.2d 1, 6 (D.C. Cir. 1979). We quote from that case:

> It is true that a court order compelling disclosure of information is not a condition precedent to an award of fees, *Foster v. Boorstin,* 182 U.S.App. D.C. 342, 344, 561 F.2d 340, 342 (1977); *Nationwide Building Maintenance, Inc. v. Sampson,* 182 U.S.App.D.C. 83, 87, 89, 559 F.2d 704, 708–10 (1977), but it is equally true that an allegedly prevailing complainant must assert something more than *post hoc, ergo propter hoc, Vermont Low Income Advocacy Council, Inc. v. Usery,* 546 F.2d 509, 514 (2d Cir.

1976). Instead, the party seeking such fees in the absence of a court order must show that prosecution of the action could reasonably be regarded as necessary to obtain the information, *Vermont Low Income Advocacy Council, Inc. v. Usery, supra* at 513, and that a causal nexus exists between that action and the agency's surrender of the information, *Cuneo v. Rumsfeld, supra* 180 U.S.App.D.C. at 190, 553 F.2d at 1366. Whether a party has made such a showing in a particular case is a factual determination that is within the province of the district court to resolve. In making this determination, it is appropriate for the district court to consider, *inter alia,* whether the agency, upon actual and reasonable notice of the request, made a good faith effort to search out material and to pass on whether it should be disclosed. We have elsewhere had occasion to note both the plethora of Freedom of Information Act cases pending before federal agencies at any given time, and the time-consuming nature of the search and decision process. *See Open America v. Watergate Special Prosecution Force,* 178 U.S.App.D.C. 308, 315, 547 F.2d 605, 612 (1976). If rather than the threat of an adverse court order either a lack of actual notice of a request or an unavoidable delay accompanied by due diligence in the administrative processes was the actual reason for the agency's failure to respond to a request, then it cannot be said that the complainant substantially prevailed in his suit. [Footnote omitted.]

*See also Church of Scientology of California v. Harris,* 653 F.2d 584, 587–88 (D.C. Cir. 1981). Federal cases have therefore established that this is largely a question of causation—did the institution and prosecution of the litigation cause the agency to release the documents obtained during the pendency of the litigation.

*Id.* at 587. This is a factual question to be determined on a case-by-case basis. Whether a judgment or an order favorable in whole or in part was obtained is not a necessary condition precedent. This is because the purpose of the statute is to encourage voluntary compliance; if the government can force a party into litigation and then deprive that party of the right to recover expenses by later disclosure, it would render the purpose nugatory. *Kaye v. Burns,* 411 F. Supp. 897, 902 (S.D.N.Y. 1976). We adopt the *Cox* analysis for use in determining whether a party has "prevail[ed] in whole or in substantial part" pursuant to sec. 19.37(2), Stats.

█ The trial court did not make any findings about causation. Both parties claim, however, that this court can make the finding, as a matter of law, albeit in favor of their respective positions. The District claims it is undisputed that: (1) the school district compiled the information because WERC would eventually need it; (2) the school district's effort to compile the information began before the petition for the writ was filed, and (3) the filing of the petition had no effect on the decision to assemble the information or on the progress of the school district's effort. The District concludes that where the facts are undisputed this court can make a finding irrespective of whether the trial court has ruled in the first instance. *See Herkert v. Stauber,* 106 Wis.2d 545, 569, 317 N.W.2d 834, 845 (1982).

We disagree that the facts are undisputed. In the first place, nowhere does the record show that WERC specifically ordered the list. The record only reveals a suggestion by WERC that a list should be prepared. The trial court could find that, because of time consid-

erations, a request for the records and resultant prosecution were reasonably necessary.

Second, whether the school district began to compile the list before the writ was served must be assessed against REA's allegation that no compilation was necessary in that all the information was readily available in a box subsequently entitled "Exhibit 23." The District's contention that the requested information "was in various forms including daily handwritten log sheets, personnel records, etc.," and thus was not a record "kept" or "created" by the District, pales in light of the *Church of Scientology* court's discussion of what constitutes "records." In that case, envelopes and buck slips were held to be records, disclosure of which was required by FOIA and should not have been ignored or discounted in evaluating the relative success of the appellant in the litigation. *Church of Scientology* at 589. The trial court here could find that no compilation was in order, that REA asked for the pertinent records and these records were available and that the District's action was not made in good faith.

Third, it may have been that the resultant computer printout was furnished to REA not as a result of the District's due diligence but because the trial court hinted that it would rule in favor of REA at the close of the case. We conclude that the facts are in dispute.

We reach the same conclusion concerning REA's assertion that the facts show undisputedly a lack of due diligence on the District's part. All of these issues are subject to a factual determination by the trial court.

We therefore reverse and remand this case for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded with directions.