RACINE EDUCATION ASSOCIATION, and James Ennis, individually, and as Executive Director of the Racine Education Association, Ben Ewers, individually, and as Assistant Executive Director of the Racine Education Association, Plaintiffs-Respondents,†

v.

BOARD OF EDUCATION FOR RACINE UNIFIED SCHOOL DISTRICT, Don P. Woods, Superintendent of the Racine Unified School District, and Del Fritchen, Assistant Supervisor of the Racine Unified School District, Defendants-Appellants.

Court of Appeals

*No. 87–1694. Submitted on briefs May 12, 1988.—Decided June 15, 1988.*

(Also reported in 427 N.W.2d 414.)

† Petition to review denied.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Gilbert J. Berthelsen,* and *Jeffrey Leavell* of *Capwell-Berthelsen,* of Racine.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Robert K. Weber* of *Schwartz, Weber, Tofte & Nielsen,* of Racine.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J. Racine Education Association (REA) brought a mandamus action to compel the Board of Education for the Racine Unified School District (the board) to release certain records. During the pendency of the action, the board released the records to REA and the trial court dismissed the action as moot. On appeal, we agreed that the action

was moot but remanded for a determination of REA's possible entitlement to attorney's fees. *Racine Educ. Ass'n v. Board of Educ.*, 129 Wis. 2d 319, 322, 385 N.W.2d 510, 511 (Ct. App. 1986).

Although Judge James Wilbershide had been the trial judge prior to appeal, the case was "reassigned" after remand to Judge John C. Ahlgrimm. No further evidence was taken.[1]

Judge Ahlgrimm reviewed the documentary evidence and the transcripts of testimony taken before Judge Wilbershide. Judge Ahlgrimm ruled that REA was entitled to attorney's fees because: (1) the prosecution of the mandamus action was reasonably necessary for REA to obtain the records; and (2) the prosecution caused the release of the records. We disagree and accordingly reverse. Additional background of the case can be found in *Racine Educ. Ass'n*, 129 Wis. 2d at 322–23, 385 N.W.2d at 511, the facts of which are adopted as part of this opinion.[2]

---

[1]The board raises a question as to the propriety of disallowing further evidence. However, the record reveals that counsel for the board informed Judge Ahlgrimm and opposing counsel at a hearing that there had been an agreement to close the evidence.

[2]The board raises a threshold issue, namely, that the information requested by REA was not a "record" as defined by Wisconsin's Public Records Law. The board's argument is twofold. First, it alleges it was required to create a record contrary to sec. 19.35(1)($l$); Stats. Second, it notes that certain information was in the hands of an independent contractor.

REA greatly disputes whether the board had to create a record to accommodate REA's request, and we do not see a need to decide this issue with finality. Nor does our disposition of this appeal require a resolution of the status of information held by an independent contractor; however, we do note that there may exist a genuine question as to whether this information constitutes a public record. *See* sec. 19.32(1), (2), Stats.

■

We begin by establishing the appropriate standard of review. Typically, a trial court's findings will not be overturned unless clearly erroneous. *See* sec. 805.17(2), Stats. The rationale for this deferential review is the ability of the trial court to observe the demeanor of the witnesses and make credibility assessments therefrom. *See In re Dejmal,* 95 Wis. 2d 141, 151–52, 289 N.W.2d 813, 818 (1980); *see also* D. Walther, P. Grove & M. Heffernan, *Appellate Practice and Procedure in Wisconsin* sec. 3.5 (1986).

Here, Judge Ahlgrimm did not have an opportunity to observe the witnesses first-hand. Because this case "swapped horses in midstream," Judge Ahlgrimm had only the documentary evidence before him, as we now have before us. Therefore, in this particular instance, Judge Ahlgrimm was in no better position than we are now to make findings of fact.

■

When the evidence to be considered is documentary, as it is here, we need not give any special deference to the trial court's findings. *See State ex rel. Sieloff v. Golz,* 80 Wis. 2d 225, 241, 258 N.W.2d 700, 705 (1977). Our review becomes *de novo. See id.* [3]

Our earlier opinion in this case set forth the standards to be used in determining whether REA was entitled to attorney's fees. The applicable statute, sec. 19.37(2), Stats., reads in part:

---

[3] If the same decision on attorney's fees had been made by Judge Wilbershide, who had the opportunity to observe the witnesses and assess their credibility, our standard of review would have been whether the findings supporting the decision were clearly erroneous. Sec. 805.17(2), Stats. Had our review been limited by the "clearly erroneous" standard, the outcome of this appeal probably would have been different.

COSTS, FEES AND DAMAGES. The court shall award reasonable attorney fees, damages of not less than $100, and other actual costs to the requester if the requester prevails in whole or in substantial part in any action filed under sub. (1).

To determine the meaning of "prevails in whole or in substantial part," we adopted the analysis of *Cox v. United States Department of Justice*, 601 F.2d 1 (D.C. Cir. 1979), which held:

[T]he party seeking such fees in the absence of a court order [compelling disclosure] must show that prosecution of the action could reasonably be regarded as necessary to obtain the information, and that a causal nexus exists between that action and the agency's surrender of the information. Whether a party has made such a showing in a particular case is a factual determination that is within the province of the district court to resolve. In making this determination, it is appropriate for the district court to consider, *inter alia*, whether the agency, upon actual and reasonable notice of the request, made a good faith effort to search out material and to pass on whether it should be disclosed. ... If rather than the threat of an adverse court order either a lack of actual notice of a request or an unavoidable delay accompanied by due diligence in the administrative processes was the actual reason for the agency's failure to respond to a request, then it cannot be said that the complainant substantially prevailed in his suit.

*Racine Educ. Ass'n*, 129 Wis. 2d at 327, 385 N.W.2d at 512–13 (quoting *Cox*, 601 F.2d at 6) (citations omitted). Therefore, the mere fact that disclosure happened after filing the mandamus action—*post hoc, ergo*

*propter hoc*—is not enough. *Id.* at 326, 385 N.W.2d at 512.

We noted in the earlier opinion that these factual questions needed to be resolved by the trial court and we remanded for that purpose. It is ironic that we now give no deference to those findings based on our *de novo* review, but we did not anticipate the turn in events caused by the change of judges.

After examining the record, including the voluminous contents of the exhibits, and considering the arguments of the parties, we conclude that REA has not shown a sufficient causal nexus between the prosecution of the mandamus action and the board's release of the records. Even before the filing of the action, the request for records had been given a high priority and was diligently, if not expediently, being worked on by several departments simultaneously.

The board's position throughout has been that it was not required to turn over the information to REA, but was doing so voluntarily because the board was preparing the same information for the Wisconsin Employment Relations Commission anyway. The record reveals that the board never considered withholding information from REA or delaying the process.

REA makes much of the fact that it never received any indication from the board regarding the records request. However, the transcripts also show that REA never inquired of the board either, despite regular contacts between their respective personnel.

We also note that Wisconsin's Public Records Law does not explicitly require the board to notify REA, the requester, as long as the board "fill[s] the request" and does so "as soon as practicable and without delay." *See* sec. 19.35(4)(a), Stats. In this regard, Wisconsin's law differs from the federal counterpart—

the Freedom of Information Act.[4] Here, we conclude that the request was filled as soon as practicable.

If the failure to timely respond to a request was caused by an unavoidable delay accompanied by due diligence in the administrative processes, rather than being caused by the mandamus action, the plaintiff has not substantially prevailed. *See Racine Educ. Ass'n,* 129 Wis. 2d at 327, 385 N.W.2d at 513. We conclude this is the case here. The board presented evidence that three computer programs had to be written to extract the information from the archived computer tapes. There were duplication errors and the usual program "bugs" to be corrected.

REA counters by contending that the board could have turned over existing paper documents for examination from which REA could extract the information. However, we have examined the contents of these documents and concur with the testimony presented by the board that it would have taken three times longer to extract the information from these documents than from the computer records. Turning over these documents could arguably have met the letter of the law but not its spirit, as REA likely would not

---

[4]Section 19.35(4)(a), Stats., reads:

*Each authority, upon request* for any record, *shall,* as soon as practicable and without delay, *either fill the request or notify the requester* of the authority's determination to deny the request in whole or in part and the reasons therefor. [Emphasis added.]

In part, 5 U.S.C. sec. 552(a)(6)(A) (1982) reads:

*Each agency, upon any request* for records made under paragraph (1), (2), or (3) of this subsection, *shall—*

(i) *determine within ten days* . . . after the receipt of any such request *whether to comply* with such request *and shall immediately notify the person* making such request of such determination and the reasons therefor . . . . [Emphasis added.]

have been able to extract the information prior to the very election for which the information was sought. ■

We therefore conclude from our *de novo* review that REA did not meet its burden of proving that the prosecution of the mandamus action was reasonably necessary to obtain the release of the records. As causation has not been adequately shown, it cannot be said that REA "prevail[ed] in whole or in substantial part." Sec. 19.37(2), Stats. We therefore reverse the trial court's judgment which awarded attorney's fees to REA.

*By the Court.*—Judgment reversed.